IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYSON L. TAYLOR,

        Plaintiff,

    v.

S. WILHELM, C. MACKLEY,
T. IVERSON, G. CHRISTESON,
D. DAIMOND, and MS. CARLBOMB,

        Defendants.

Civil No. 07-175-AS

FINDINGS AND RECOMMENDATION

    TYSON L. TAYLOR
    SID #12429128
    Oregon State Penitentiary
    2605 State Street
    Salem, OR  97310

        Plaintiff *Pro Se*

    WILLIAM G. BLAIR
    Senior Assistant County Counsel
    155 N. First Ave.
    Suite 340-MS 24
    Hillsboro, OR  97124-3072

        Attorney for Defendants

1 - FINDINGS AND RECOMMENDATION -

ASHMANSKAS, Magistrate Judge.

Plaintiff, an inmate at the Oregon State Penitentiary, brings this civil rights action *pro se*. Currently before the court is Defendants' Motion for Summary Judgment (#17).[1] For the reasons that follow, Defendants' Motion should be GRANTED, and this action should be DISMISSED, with prejudice.

## BACKGROUND

Plaintiff alleges Defendants, who are employed in various capacities at the Washington County Jail (the "Jail"), violated Plaintiff's right to be free from cruel and unusual punishment by requiring Plaintiff to eat "nutraloaf" as a disciplinary sanction on several occasions during Plaintiff's incarceration at the Jail. Plaintiff seeks money damages. Defendants argue Plaintiff is not entitled to relief because Plaintiff failed to exhaust his administrative remedies.[2]

---

[1] Plaintiff was advised of federal summary judgment standards by Notice (#12) issued by the Clerk of the Court on April 20, 2007. Plaintiff was also given the opportunity to file a response to Defendants' Motion for Summary Judgment, but Plaintiff did not file any response.

[2] Defendants also argue Plaintiff is not entitled to relief on the merits of his claims and that they are entitled to qualified immunity. Because the court finds Plaintiff's failure to exhaust his administrative remedies precludes his claims the court need not address these additional arguments.

2 - FINDINGS AND RECOMMENDATION -

**SUMMARY OF FACTS**

Under Jail policies and procedures, every prisoner is given a security classification upon booking into the facility. Security classification levels 1, 2, and 3 are regarded as minimum security risk; levels 4, 5, and 6 are considered medium risk, and levels 7 and 8 are maximum security prisoners. The security classification may be adjusted during the prisoner's time in custody based on behavior.

The Jail has two categories of discipline. For minor infractions, sanctions may include no more than 24 hours of restriction to cell and loss of privileges such as commissary, recreation, visiting, telephone, and library. For major infractions, sanctions may include confinement in segregation housing in the Jail's maximum security pod, restriction to one hour of outdoor exercise during a 24-hour period, and denial of privileges. Sanctions for major infractions may also include a disciplinary sanction restricted diet, or "DSRD." DSRD meals consist of a loaf of various foods compressed together and baked. The DSRD loaf is often referred to as "nutraloaf."

Formal discipline of an inmate is initiated by a deputy, or a supervisory or command officer, accompanied by a written report documenting the facts relevant to the incident deemed to warrant discipline. Certain types of alleged rules violations require an automatic hearing, while others are administratively adjudicated.

3 - FINDINGS AND RECOMMENDATION -

In either event, the hearings officer or administrative adjudicator will assess the reported facts and make a determination as to guilt and severity of the offense, then impose sanctions. The sanction of DSRD can only be recommended by the hearings officer or administrative adjudicator, and must be approved by the jail commander or acting commander before it may be imposed.

If an inmate wishes to appeal the first-level disciplinary adjudication, he or she may appeal to the Administrative Lieutenant within seven days of the sanction approval date. The inmate may appeal the Administrative Lieutenant's decision within seven days to the Jail Commander. From the Jail Commander's decision, the inmate may appeal to the Washington County Sheriff within 14 days.

On July 29, 2004, Plaintiff was lodged in the Jail, where he was held on multiple felony charges pending in Washington County, as well as detainers from Yamhill County and the United States Marshal. Plaintiff was initially classified as "5Med."

Between August 3, 2005, and September 3, 2005, Plaintiff received at least six informal discipline referrals. In each case, jail officials sanctioned Plaintiff with 24-hours of cell restriction and loss of privileges.

On August 19, 2004, Plaintiff assaulted another inmate and refused to separate when a jail deputy ordered him to do so.

4 - FINDINGS AND RECOMMENDATION -

Plaintiff continued to assault the other inmate until sprayed with "pepper spray." Plaintiff was charged with Assault in the Third Degree, was reclassified to "8Max," and was sanctioned with 30 days of disciplinary segregation and ten days of DSRD.

On November 11, 2004, Plaintiff pleaded guilty to disciplinary charges of Disobedience of an Order, Disruptive Behavior, and Unauthorized Possession of Property. For these violations, he was sanctioned with ten days of segregation.

Also on November 11, 2004, Deputy Angela Nielsen interviewed Plaintiff after an incident involving another inmate. During the interview, Plaintiff threatened violence to jail staff and used highly offensive, obscene, and abusive language.

On November 12, 2004, Jail officials found contraband in Plaintiff's cell, and Plaintiff had placed toilet paper in his cell vent. For these violations, he was sanctioned with ten days of disciplinary segregation.

On December 5, 2004, Jail officials found more contraband in Plaintiff's cell, and Plaintiff lied to investigating deputies. Plaintiff pleaded guilty to these disciplinary charges and was sanctioned with 20 days of disciplinary segregation.

On December 10, 2004, on three separate occasions within a five-hour period, Plaintiff used obscene, abusive, and derogatory language to Jail deputies. For these violations, he was

5 - FINDINGS AND RECOMMENDATION -

sanctioned with 20 days of disciplinary segregation and ten days of DSRD, the latter to commence after Christmas.

On December 27, 2004, Plaintiff passed contraband to other inmates, including a towel to an inmate Plaintiff knew was suicidal, who then attempted to strangle himself with the towel. Plaintiff was sanctioned with 20 days of disciplinary segregation.

On December 30, 2004, while on DSRD restriction, Jail officials found Plaintiff attempting to receive food from another inmate. Upon searching Plaintiff's cell, deputies found a drawing of a naked woman on the inside of Plaintiff's cell door. Defendant Karlbom[3] imposed an additional ten days of DSRD. Karlbom informed Plaintiff that if he could go 30 days from the date of his January 2, 2005, hearing with no further discipline, she would discuss with Lt. Mackley the possible reduction of Plaintiff's remaining time in disciplinary segregation.

On January 1, 2005, while still on DSRD, Plaintiff was again found attempting to receive food from another inmate. Plaintiff was sanctioned with 14 days of disciplinary segregation.

Between January 2 and January 4, 2005, Plaintiff accused Deputy Darling of lying about his conduct in a disciplinary report, and made numerous obscene, sexually harassing, and threatening statements to and about her. Plaintiff was sanctioned

---

[3] In his Complaint, Plaintiff misspells Defendant Karlbom's name as "Carlbom."

6 - FINDINGS AND RECOMMENDATION -

to 20 days of disciplinary segregation and another ten days of DSRD.

On January 8, 2005, a jail deputy observed Plaintiff kicking the wall and punching his cell desk with full force blows. Plaintiff head-butted his cell door and yelled a derogatory statement at the deputy. Plaintiff was sanctioned with 14 days of disciplinary segregation.

On February 7, 2005, at the suggestion of Defendant Karlbom, Defendant Mackley suspended Plaintiff's forthcoming ten-day period of DSRD on the condition that Plaintiff demonstrate good behavior thereafter. On February 15, 2005, however, Plaintiff created a disturbance in his cell and was forcibly extracted by the CERT team. Based on the incident, Defendant Mackley reinstated all suspended sanctions on Plaintiff, including DSRD.

On March 5, 2005, a jail deputy overheard Plaintiff attempting to persuade another inmate to give Plaintiff some food items from the commissary. When the deputy thwarted this attempt, Plaintiff responded with obscene, abusive, and threatening language. Plaintiff pleaded not guilty to the disciplinary violations, and was sanctioned with 20 days of disciplinary segregation and ten days of DSRD.

On March 10, 2005, Plaintiff was transported to the Oregon State Hospital for psychiatric treatment. Plaintiff returned to the Jail on April 21, 2005.

7 - FINDINGS AND RECOMMENDATION -

On May 9, 2005, Plaintiff asked Defendant Mackley to consider suspending some of Plaintiff remaining disciplinary segregation time. Defendant Mackley told Plaintiff she would consider his request, and asked for a recommendation from Defendant Diamond, the operations Sergeant. Upon his return from off-site training on May 15, 2005, Defendant Diamand replied he would be open for a one-time try. Defendant Mackley ordered that the last 30 days of Plaintiff's pending disciplinary segregation be suspended on the condition that plaintiff not violate any Jail rules, that he be respectful of and take direction from staff, and that he behave as a model jail citizen.

On September 6, 2005, Plaintiff was transferred to the custody of the Oregon Department of Corrections to begin serving prison sentences on multiple felony convictions. For all of the major rules violations for which Plaintiff was sanctioned during his incarceration at the Jail, Plaintiff never appealed beyond the Jail Commander to the Washington County Sheriff.

## DISCUSSION

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement "applies to all inmate suits about prison

8 - FINDINGS AND RECOMMENDATION -

life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).

Inmates must exhaust all grievance remedies prior to filing a § 1983 action, including appealing the grievance decision to its highest level within the grievance system.  Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir.), cert. denied, 540 U.S. 810 (2003).  A prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance or appeal.  Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006).

Failure to exhaust remedies under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion.  Jones v. Bock, 127 S.Ct. 910, 921 (2007); Wyatt, 315 F.3d at 1117-1119.  If the court concludes an inmate has not exhausted administrative remedies on any claim, "the proper remedy is dismissal of the claim without prejudice."  Wyatt, 315 F.3d at 1120.

Defendants present evidence that Plaintiff did not exhaust his appeal opportunities with respect to any of the disciplinary proceedings resulting in imposition of the DSRD sanction, as Plaintiff did not file any appeals with the Washington County Sheriff.  As such, Plaintiff failed to fully exhaust his administrative remedies.

9 - FINDINGS AND RECOMMENDATION -

In this Circuit, the proper method for a defendant to assert the affirmative defense of failure to exhaust is an unenumerated Fed. R. Civ. P. 12(b) motion as a matter in abatement, not through a motion for summary judgment.  <u>Id</u>.  Nonetheless, this court construes Defendants' motion as such and, so construed, grants finds Plaintiff's claims must be dismissed.

## **RECOMMENDATION**

For these reasons, Defendants' Motion for Summary Judgment (#17), which the Court construes as an Unenumerated Rule 12B Motion to Dismiss, should be GRANTED, and a judgment of DISMISSAL, without prejudice, should be entered in this action.

## **SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due December 28, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 10 days after service of a copy of the objections.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this  <u>7th</u>  day of December, 2007.

                                    /s/ Donald C. Ashmanskas
                                    Donald C. Ashmanskas

                                            United States Magistrate Judge

11 - FINDINGS AND RECOMMENDATION -